SARTAIN, Judge.
This case arose out of an automobile accident which occurred on December 4, 1962. The only issue presented on appeal is that of quantum. The trial judge awarded plaintiff-appellant the sum of $1,589.00, which included $1,500.00 for personal injuries.
Plaintiff appeals and contends that the trial judge erred in holding that plaintiff failed to prove that his ruptured disc and resulting laminectomy were caused by the accident of December 4, 1962. Alternatively, plaintiff asks that in the event the ruptured disc was not caused by the accident of December 4, 1962, that the award of $1,500.00 for pain and suffering be increased to $4,000.00.
Defendant answered the appeal urging the correctness of the decision of the district judge.
After this present suit was filed and before trial thereof, plaintiff was involved in a second accident on January 12, 1964. Suit on the second accident was filed on January 8, 1965, involving the same type of accident (rear-end), similar injuries, and the same insurer. The second suit was compromised before trial on the first accident. The trial judge found that as a result of the first accident, plaintiff sustained a lumbo-sacral sprain and awarded damages accordingly.
*901 The issue presented here as in the district court is one of fact and involves the evaluation of testimony of the various witnesses, giving to each such weight as good judgment and sound reasoning dictate. The trial judge’s opinion and his findings of fact under these circumstances are entitled to great weight and in the absence of manifest error must stand. We are favored with excellent and detailed written reasons for judgment, which in our opinion are eminently correct and fully supported by the record. Accordingly, we quote therefrom at length and with approval :
“But there is a serious issue over the extent of this liability as the principal injury for which Corrales is seeking to recover is a herniated vertebral disc, for which he underwent an operation, and, as he had a second automobile accident just prior to the operation Travelers contends that the herniation occurred as a result of the second accident, and not the first.
The events that give rise to the issue happened substantially as follows:
Corrales’ first collision was on December 4, 1962, at about 6:45 in the morning. Although he claims that his back, neck and body generally hurt him as a result of the accident, he went to work at about 8:30 A.M. and was able to do his work. He is a shipfitter and does lifting, stooping, welding and carries objects of considerable weight.
He continued to work regularly and did not see a doctor for his complaints until December 16, 1962, twelve days after the accident. He again saw the doctor twelve days later, on December 28th. The doctor is Dr. G. H. Kittredge of Morgan City, a general practitioner and Corrales’ family physician.
Dr. Kittredge diagnosed Corrales’ injury as a lumbo-sacral sprain. He found no evidence of a herniated disc or other serious back injury. He reached this conclusion as the result of hyperextension, inflexion and reflex tests of the lower extremities. He prescribed muscle relaxants and mild sedatives. On the last visit, he added micro-therm treatments. He thought that in two or three weeks Corrales’ pain would disappear.
Corrales kept on working and did not again see a doctor for his back for a long time.
However, he saw Dr. Kittredge on March 22 for the flu, on July 29, 30 and 31 for an infected wisdom tooth, and on December 30 for a cold, all in 1963. The doctor does not specifically recall that Corrales complained about his back on these visits. The next time Dr. Kittredge saw Cor-rales was on February 28,1964 to remove the stitches that were put in the disc operation.
On December 3, 1963 Corrales filed the within suit. But he had not yet been operated on for the disc. The claims for his personal injuries were $1,000.00 for pain at the time of the injury and for the first three or four days thereafter, and $10,000.00 for pain, suffering, mental anguish and humiliation due to pain in the back, neck, headaches and upset nerves for approximately twelve months.
After the operation, and on April 6, 1964, he increased the claims in an amended petition to $3,000.00 for the first claim and subdivided the other into several categories that total a much larger amount. These cover the operation.
But before he filed his suit, Corrales was referred to Dr. S. J. Russo, a general practitioner in Morgan City for evaluation. Dr. Russo gave Corrales the usual examination indicated for neurological injuries of the back, including an X-ray, and found no evidence of injury. The examination was conducted on March 6 and 22 in 1963. The results of the examination did not indicate the necessity for treatment or a myelogram as the rc- *902 flexes and other tests were found to be normal.
On January 6, 1964, ab.out one month after filing his. suif, and eleven months[1] after the accident, Corrales was examined in New Orleans by .'Dr. Robert M..Rose, án orthopedic surgeon. D'r. Rose could not find any. evidence of a herniated disc but he did conclude that' Corrales had something the matter with his back. Certain of the tests produced some pain and Corrales told him that his back hurt him alm.ost constantly.- The doctor- suspected that Corrales was degenerating a disc.
Pie prescribed a muscle relaxant and gave Corrales another appointment.
The other appointment was fourteen days later, on January 20, 1964. The examination on. that day revealed strong evidence of a herniated disc. Corrales’ condition had deteriorated. The doctor asked him what he had been doing. He said he had been doing-a,-lot'of climbing.
The doctor ordered a myelogram. It showed that Corrales did have a herniated disc. Pie underwent an operation on January 3.0 and'was discharged from the .hospital on February 4, 1964. He went back to work about April 13.
Dr. Rose found adhesions to the nerve roots at the site of the disc and concluded that the herniation had occurred some time before the operation, but he could not say if it was' three weeks or three months. He thought it was longer than ten days.
Thro.ugh .his examinations .after the operation Dr. Rose found that Corrales had made á'normal recovery and that his condition 'was' about normál. ' He had no muscle spasms ' ,
Dr. Richard W.-Levy, a neurosurgeon, and Dr.' Richard M. Paddison, a neurologist, both of New Orleans^ examined Cor-rales for evaluation after the operation. Dr. Levy’s' examination was on June! 2 and Dr. Paddison’s was in September, 1964.
Both doctors believe that the results of the operation were good. They found that Corrales had almost a normal back, can and should work, but that he should not' lift' objects weighing more than 25’ to 30 pounds. The’ ranges .of tibe motions' of his back and legs, and his reflexes, were almost normal. They did not • find any evidence ' of nerve root’ compression. . '
The June examination revealed some' muscle spasm and tenderness at the, site of the operation.'. , The September examination did not do so. This indicates that' Corrales’ condition was improving.
- Subsequent to these events, Travelers discovered that Corrales had a -second rear-end accident near Amelia, St. Mary Parish, on January 12, 1964. That date was between Dr. Rose’s first examination of Corrales on January 6 and his second, on January 20, 1964.
It now contends that the injury Corrales received in this second accident is the reason why his physical condition had so deteriorated between Dr. Rose’s examinations. Because it was only after the second accident that Corrales was found to have a herniated disc, it contends that the disc was herniated in that-accident.-
There is no evidence about this accident except Corrales’ testimony that .it was serious, and his petition to recover for his damages and injuries as-a result of it.
His petition was filed in this court on January 8, 1965. It alleges that on January 12,;-1964 his- car was struck from the rear by a vehicle operated by one of the defendants because it had no brakes and was out of control. He seeks to recover the amount of $116,583.90. _ Apparently, most of the items composing this amount are made up- of the same items he is *903 claim-ingE here.--. His' claims.'for,’Joss:of wages,’ pain land sufferingand,-f or-;his medical expenses:appear .to be,rthe:same; Ironically, Travelers is alleged to be the public liability insurer in that' cá’se ■ also. It was made a defendant.
After discovering that: there had been the second accident,' Travelers re-examined Dr. Rose and Dr. Levy for the purpose of obtaining their expert opinions on the possibility, or probability, of Cor-rales getting -his-. disc"h«rniated in that accident, instead of the first.
Their opinions'were' tHe’- ’obvious. Of course, it was possible and probable. Dr. Rose so stated, even though he had found adhesions'to the nerve roots'when he operated on Corrales; He did not explain. The determination we must make to reach the proper conclusion is mainly one of fact. The specific fact is whether Corrales received injury in the accident he sues upon that resulted in the' hernia-tioii of his disc. ■ This determination makes a .significant difference in the amount’of damages he should be awarded.
Corrales bears the burden of - proof in establishing that fact. It is apparent thdt he has failed to do so, by a preponderance of the evidence.
To. begin with, a herniated disc . is a serL ous condition. It is, usually disabling. It is so severe and drastic that doctors readily. .detect it. Had Corrales’ disc been ruptured on the morning of his accident it is unlikely that he would have gone 'to. work, or been able to work the whole day. It is even more unlikely that he could have stayed, and worked, a period - of twelve days .befpre -seeking medical ’at; tention, and then wait another twelve days before seeing the doctor again,-and, thereafter require no further medical attention.
But even more significant is the fact that ■Dr. Kittred'ge did not find ány evidence ofla-herniáted disc, but only of a spfairi.’ Several .months dater- Dr;,'Rtisso-,li'ké-wlse found no-tevidenee of ¡herniation';'-.-Sind neither.- did; Dr;. Rosé isevefabmonths -kf ter that.1
Yet, closely following the second accident, and oh- the-'first' eÁaitfiii&tioñCJbl-'lowing'it; Dr.;-Rose'réádily-discOv'erédthe hefn-iatión and'-cónfirmed it by the myl’eo-gram and the operation.
It is'also -of importance that'during this ’period- Of timé Corrales did his';’wOrk¡so .well that lie rose ¡in- the rating of his employment ’io- the top grade,
-That portion of his claim,that arose from .the herniation of a (lisp must therefo.re.;be rejected.
However, “ in the remaining" portion pain and suffering still is his principal’ item of damages.
Corrales-testified'that'-he Has -never been without :pain in his back, -legs and' head since his first-¡accident." He said„that it has always been on the increase. His operation did not stop- it-.- He continually has to take aspirins, Anacins, and similar medicine. "When’he gets ' home after work, he says, he has to lie down but cannot rest. In the morning he has trouble getting out of bed. He cannot work in his garden, swim, dance and fish as he used to do. Mrs. Corrales corroborated her husband.
At his work, Corrales said that it was only through- the kindness and indulgence of his boss that he was able to hold his job. When his work requires him to lift, stoop or bend, his boss provides him with someone to do it for him. His boss corroborated that. The boss further added that Corrales is .very dependable and an excellent blueprint’ ' reader. ’ When he sends Corrales on a job, the job gets done as it ought’ to be.
Another significant circumstance is that Corrales complained of pain to every doc *904 tor who examined him and not one of them disputed the complaint. Dr. Rose said that he thought Corrales had a “soft” back and would continue to have trouble with it. Another called it “weak”.
Therefore, it appears that Corrales received a sprain in his back in the accident and it never did get completely well.
For the resulting pain, suffering and inconvenience he is entitled to recover, at least, up until his second accident. The pain thereafter must be attributed to the alleged injury he received in that accident, as he testified that his back hurt him more after it. There is no way of separating the two complaints. Nor are we justified to hold that the post-operative pain has any connection with the first accident.
The period covering the compensable pain is therefore between December 4, 1962 and January 12, 1964, or approximately one year and one month.
It is difficult to convert pain and suffering into dollars and cents, but it appears that the amount of $1,500.00 would be fair and adequate, and do justice between the parties.”
Plaintiff’s alternative demand is that the amount of $1,500.00 awarded by the trial judge should be increased to the sum of $4,000.00. Here then is the question of whether or not the trial judge has abused the rather broad discretionary authority granted to him in the assessment of damages. LSA-CC Art. 1934, Subd. 3. A review of the medical testimony, the testimony of plaintiff, and others, including plaintiff’s work record (as noted by the trial judge) convinces us that the trial judge did not abuse his discretion in the award of $1,500.-00 and that the judgment in this respect is neither inadequate nor excessive and should stand.
For the above and foregoing reasons Hhe judgment appealed from is affirmed , at plaintiff-appellant’s costs.
Affirmed.

. It was actually thirteen months.